(975 P.2d 1228)

No. 78,434

STATE OF KANSAS, *Appellee*, v. DARREL R. HARRIS, *Appellant*.

Opinion filed March 19, 1999.

*Rebecca E. Woodman*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Frederick B. Campbell*, assistant county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before BRAZIL, C.J., LEWIS, J., and ROGG, S.J.

LEWIS, J.: Defendant appeals from the order of the trial court refusing to suppress evidence. The evidence in question was found in a residence in plain view of officers who were in the residence to execute a writ of assistance.

The home in which the evidence was found had been mortgaged to a financial institution. Defendant became delinquent in payment of the note which was secured by the mortgage. In due time, the financial institution which held the mortgage began foreclosure proceedings. These proceedings were instituted in 1993 in Anderson County and are found in case No. 93-C-3.

Defendant was personally served in the foreclosure proceeding but did not appear in person or by counsel until after a default judgment had been entered against him. Defendant then filed a motion to set aside the default judgment. However, defendant later withdrew this motion and permitted the default judgment to stand. The sale was confirmed, and a sheriff's deed was issued to the purchaser. The mortgage was foreclosed, and a redemption period of 6 months was set by the trial court. Defendant was represented by counsel on the motion to set aside the default judgment.

Long after the redemption period had expired, defendant refused to vacate the premises. The journal entry of foreclosure contained the following language:

"IT IS FURTHER ORDERED that upon praecipe of the holder of said Sheriff's Deed, the Clerk of this Court shall issue to the Sheriff of Anderson County, Kansas, a Writ of Assistance directing said Sheriff to place the holder of said Sheriff's Deed in possession of the above-referenced real estate and the improvements thereof."

In 1996, the attorney for the holder of the sheriff's deed filed the praecipe discussed above, and a writ of assistance was issued.

The writ of assistance issued in this case reads as follows:

"The State of Kansas to David L. Vaughan, Sheriff of said County, Greetings:

"WHEREAS, in an action pending in the District court of said County wherein Federal Deposit Insurance Corporation as manager of the FSLIC Resolution Fund was plaintiff, and Darrel R. Harris and Kathryn A. Harris were defendants, judgment was rendered in favor of said plaintiff and against the said defendants, and a decree foreclosing a mortgage given to secure said indebtedness was rendered by said Court, and said premises ordered sold to satisfy said judgment in case said defendants should fail to pay the same; and

"WHEREAS, on the 28th day of July, 1993, the premises described in said mortgage were sold by the Sheriff of said County to Federal Deposit Insurance Corporation as manager of the FSLIC Resolution Fund; and

"WHEREAS, said Sheriff made his return of the sale of said premises, as required by law, and the said Court, on the 3rd day of January, 1994, duly confirmed said sale and ordered the Sheriff to make a deed conveying said premises to Federal Deposit Insurance Corporation as manager of the FSLIC Resolution Fund, the purchaser thereof, and to put said purchaser in possession of said lands and tenements; and

"WHEREAS, David L. Vaughan, Sheriff as aforesaid, executed and delivered to said Plaintiff, Federal Deposit Insurance Corporation as Manager of the FSLIC Resolution Fund, a deed of conveyance in accordance with the decree and orders of the Court; and

"*WHEREAS, the said premises are in possession of defendant Darrel R. Harris who refuses to surrender the possession thereof to said Plaintiff Federal Deposit Insurance Corporation as manager of the FSLIC Resolution Fund, the purchaser of the same;*

"*NOW THEREFORE, you are hereby commanded to dispossess said defendant Darrel R. Harris and to place said Federal Deposit Insurance Corporation as manager of the FSLIC Resolution Fund in possession of said premises, described as follows, to wit:*

Lots 5 and 6 in Block 6 in Pinegar's Second Addition to the City of Colony.
Also known as 702 E. Broad Street, Colony, Kansas.
situated in Anderson County, Kansas.

"And *you are hereby commanded to make a return of this Writ, with your endorsement thereon, certifying the manner in which you have executed same, within ten (10) days from the date you receive the same.*

"WITNESS MY HAND and seal of said Court, this 1st day of May, 1996.
                    Clerk of the District Court
                    /s/ Louann Maley" (Emphasis added.)

Of particular importance to our decision is the requirement that the writ of assistance be executed within 10 days of its receipt by the sheriff. The writ of assistance was received by the sheriff on May 1, 1996.

On May 13, 1996, five county law enforcement officers went to the dwelling of defendant to execute the writ of assistance. The officers first attempted to gain entrance into the house by knocking on the door, and yelling through the door and the windows, but no one was in the house. The officers entered the house under the writ of assistance, intending to execute that order. While engaged in a general search for their own safety and other purposes, the law enforcement officers discovered, in plain view, drugs and other items of contraband in the dwelling occupied by defendant.

After the contraband was discovered, the police officers halted the search and obtained a search warrant under which they continued their search and seized the evidence in question.

The search yielded a significant amount of contraband. We will not detail those items specifically. However, we observe that defendant was convicted of cultivation of marijuana, possession of cocaine, no drug tax stamp, possession of drug paraphernalia, and possession of marijuana.

All of the evidence defendant seeks to suppress came from the dwelling in question and was discovered as a result of execution of the writ of assistance and seized under the search warrant.

Defendant argues that the writ of assistance was defective and that the seizure of any items of evidence from the house under the search warrant should be suppressed as fruit of the poisonous tree. Defendant argues that the officers were not legally on his premises when they observed the drugs in plain view. Defendant argues that the writ of assistance was defective and void. We do not agree, and we affirm defendant's convictions.

First, it is clear that the fact that a "seizure occurred in [a] civil context does not render the Fourth Amendment inapplicable." *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993); see *Soldal v. Cook County*, 506 U.S. 56, 121 L. Ed. 2d 450, 113 S. Ct. 538 (1992).

In *Soldal*, two law enforcement officers participated in the eviction of the plaintiff from his mobile home and in the seizure and removal of that mobile home from the lot in which it was parked. The facts of that case indicate that the law enforcement officers knew that the landlord had no eviction order and that his actions

were illegal. Despite this fact, they assisted the landlord in evicting the plaintiff and in removing his mobile home.

The plaintiff brought a § 1983 suit against the law enforcement officers and the manager of the trailer park on the grounds they had violated his right to be secure from unreasonable searches and seizures.

The 7th Circuit Court of Appeals sustained a trial court decision granting summary judgment to the defendant. See *Soldal v. County of Cook*, 923 F.2d 1241, *reh. granted* 931 F.2d 445, *reaffirmed en banc* 942 F.2d 1073 (7th Cir. 1991).

The basis of the decision by the 7th Circuit Court of Appeals was that the removal of the mobile home did not constitute a seizure for purposes of the Fourth Amendment or a deprivation of due process for purposes of the Fourteenth. The appeals court concluded that because the seizure was not made in the course of public law enforcement and because it did not invade Soldal's privacy, it was not a seizure as contemplated by the Fourth Amendment.

The Supreme Court disagreed with the 7th Circuit and reversed its decision. The Court concluded that when State action invades the Fourth Amendment rights of a citizen, these rights apply in either a criminal or a civil context.

In the instant matter, there is no question that law enforcement officers of the state of Kansas were involved in the entry into defendant's home under the writ of assistance. Under those circumstances, there is always the possibility that the Fourth Amendment rights of the citizen involved may have been violated.

We hold that the Fourth Amendment to the United States Constitution was implicated by the seizure of the items from defendant's home. Despite that implication, we ultimately hold that defendant's Fourth Amendment rights were not violated.

The crucial question is the validity of the writ of assistance. If that instrument was valid, the officers were legally on and in defendant's premises when the drugs were observed in plain view. If the writ of assistance was defective or otherwise void, then the entry of the police officers into defendant's dwelling was unau-

thorized and may have violated defendant's Fourth Amendment rights.

Defendant first argues that the writ of assistance was not executed and returned within the 10-day period provided in its contents. The sheriff received the writ of assistance on May 1, 1996, and executed it on May 13, 1996. At first blush, it appears that the 10-day period for execution and return had expired prior to the execution of the writ of assistance.

Defendant, however, fails to reckon with the provisions of K.S.A. 1998 Supp. 60-206, which states:

"The following provisions shall govern the computation and extension of time: "(a) . . . In computing any period of time prescribed . . . by order of court . . . the day of the act, event, or default from which the designated period of time begins to run shall not be included. . . . When the period of time prescribed or allowed is less than 11 days, *intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.*" (Emphasis added.)

The reckoning of the 10-day period authorized in the writ for its execution and return must be computed in accordance with the statute quoted above. If one counts the days in the manner commanded by that statute, the 10th day, excluding intermediate Saturdays and Sundays, would be May 15, 1996. The writ of assistance was returned on May 13, 1996, well within the 10 days required by the instrument. We hold the writ of assistance was returned within the period of time provided for in its contents and that it was a valid and lawful order.

We are aware that the argument concerning 60-206 was not made to the trial court by the State. However, that will not bar our consideration where " 'the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case.' " *State v. Bell,* 258 Kan. 123, 126, 899 P.2d 1000 (1995). We consider the provisions of 60-206 under that theory. There is another rule that comes into play, which is that a "judgment of a trial court, if correct, is to be upheld even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision." *State v. Wilburn,* 249 Kan. 678, 686, 822 P.2d 609 (1991). Defendant's argument that the writ

of assistance was rendered void by not having been executed and returned within the time period required is of no merit.

Defendant next argues that the writ of assistance is invalid because he was given no advance notice that it might be issued. We consider this argument pure sophistry. There is no requirement that a defendant be given notice and a hearing prior to the issuance of a writ of assistance, and we hold that under the circumstances shown, no such procedure was necessary.

The fact is, defendant was given notice in the journal entry foreclosing the mortgage. This document, the contents of which we must assume defendant was aware, provides that upon the filing of a praecipe, a writ of assistance shall be issued on behalf of the holder of the sheriff's deed. Finally, the illegal drugs were seized under a search warrant that was obtained after the officers observed the drugs in plain view. This search warrant has not been challenged by defendants. We think it is significant to note that a defendant has no right to notice and a hearing prior to the issuance of a search warrant. We hold that due process requires nothing more for the issuance of a writ of assistance than is required in the issuance of a search warrant. The fact that defendant was not given notice of and a hearing on the question of whether a writ of assistance should be issued does not render the writ of assistance null and void or improper in any way.

The record shows that at the time the law enforcement officers observed contraband in plain view in defendant's dwelling, they were legally present and doing what they were required to do. The writ of assistance commanded these officers to dispossess defendant from the premises foreclosed upon, and the officers were in the process of doing that job.

The basis for the *Soldal* decision was prompted by the fact that the police officers in that case had no valid eviction orders and knew that fact. They knew the landlord was proceeding illegally and still assisted him in seizing and removing the plaintiff's mobile home. The absence of a legal order and the knowledge of that fact by the police officers rendered their seizure of the plaintiff's mobile home unreasonable.

The Supreme Court discussed the implications of its decision in *Soldal* as follows:

"Respondents are fearful, as was the Court of Appeals, that applying the Fourth Amendment in this context inevitably will carry it into territory unknown and unforeseen: routine repossessions, negligent actions of public employees that interfere with individuals' right to enjoy their homes, and the like, thereby federalizing areas of law traditionally the concern of the States. For several reasons, we think the risk is exaggerated. To begin, our decision will have no impact on activities such as repossessions or attachments if they involve entry into the home, intrusion on individuals' privacy, or interference with their liberty, because they would implicate the Fourth Amendment even on the Court of Appeals' own terms. This was true of the Tenth Circuit's decision in *Specht* with which, as we previously noted, the Court of Appeals expressed agreement.

*"More significantly, 'reasonableness is still the ultimate standard' under the Fourth Amendment,* Camara, supra, at 539, *which means that numerous seizures of this type will survive constitutional scrutiny.* As is true in other circumstances, the reasonableness determination will reflect a 'careful balancing of governmental and private interests.' *T.L.O.,* supra, at 341. Assuming, for example, that the officers were acting pursuant to a court order, as in *Specht v. Jensen,* 832 F.2d 1516 (CA10 1987), or *Fuentes v. Shevin,* 407 U.S. 67 (1972), and *as often would be the case, a showing of unreasonableness on these facts would be a laborious task indeed.* Cf. *Simms v. Slacum,* 3 Cranch 300, 301 (1806). Hence, while there is no guarantee against the filing of frivolous suits, had the ejection in this case properly awaited the state court's judgment *it is quite unlikely that the federal court would have been bothered with a § 1983 action alleging a Fourth Amendment violation.*

"Moreover, we doubt that the police will often choose to further an enterprise *knowing that it is contrary to the law, or proceed to seize property in the absence of objectively reasonable grounds for doing so.* In short, our reaffirmance of Fourth Amendment principles today should not foment a wave of new litigation in the federal courts." (Emphasis added.) 506 U.S. at 71-72.

There are other decisions which support our holdings in the instant matter. In *Jackson v. State,* 430 S.E.2d 781, 785 (Ga. App. 1993), the Georgia Court of Appeals said:

"Law enforcement officials, who are doing their job in a place where they are entitled to be, are not required to ignore evidence of a criminal offense which appears in the course of their lawful activity. There was no Fourth Amendment violation, since any law enforcement officer, who became aware of the blood test results under these circumstances, was authorized to seize this evidence under the 'plain view' doctrine."

In *Sheik-Abdi v. McClellan*, 37 F.3d 1240 (7th Cir. 1994), the police lawfully entered a residence on a medical emergency. Once inside, they observed contraband which they seized and used in the prosecution of the defendant. The defendant sought to have the evidence suppressed, but the court declined to do so, holding: *"Once the veil of the home has been legally pierced*, we see no need for police officers to turn a blind eye to crime . . . . At the same time, however, emergencies should not be used pretextually in order to blunt the warrant requirement for home arrests." (Emphasis added.) 37 F.3d at 1245.

In *Ross v. Ford Motor Credit Co.*, 867 S.W.2d 546, 553 (Mo. App. 1993), we find:

"The seizure of the automobile from the Rosses' house was not a violation of their 4th Amendment rights. The procedure was justified by section 105.240, RSMo.1986. The Rosses do not claim that section was unconstitutional. The 4th Amendment protects against *unreasonable* searches and seizures. The action of the officers was not unreasonable. They acted in compliance with a court order of delivery which was fair on its face. [Citation omitted.] *Soldal v. Cook County*, 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992), does not help the Rosses. *There the sheriff's deputies acted without any court order, aiding a landlord to evict a tenant.*" (Emphasis added.)

We hold that the writ of assistance issued and delivered to the sheriff was valid and enforceable. The sheriff properly executed the writ of assistance. The police officers lawfully entered defendant's dwelling pursuant to that writ of assistance and observed contraband items in plain view. We hold that any seizures made as a result of the entry into the home under this writ of assistance were not unreasonable as a matter of law and did not violate the Fourth Amendment rights of the possessor of that property.

The State also argues that under the principle of *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984), the evidence would be admissible even though the search may have violated the defendant's Fourth Amendment rights. In *Leon*, the Supreme Court said:

"As we observed in *Michigan v. Tucker*, 417 U.S. 433, 447 (1974), and reiterated in *United States v. Peltier*, 422 U.S., at 539:

'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct

which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.'

The *Peltier* Court continued, *id.*, at 542:

'If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'

[Citations omitted.] In short, where the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.' [Citation omitted.]

"This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' [Citation omitted.] Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 919-21.

Indeed, even if we were to assume that the writ of assistance under which the officers operated was technically void, the evidence would nonetheless be admitted under the doctrine set forth in *Leon*. The writ of assistance bears the seal of the district court, is directed by the sheriff of the county, and commands the sheriff to dispossess a defendant from a specifically described tract of real estate. There was no reason for the officers to believe that the writ of assistance was in any way inappropriate or illegal. We hold that the doctrine of *Leon* would have applied and the evidence seized would have been admissible regardless of the validity of a writ of assistance.

The State argues that defendant did not have standing to raise the issues concerning the premises in question because he did not own the house and was occupying it illegally. In view of what we said earlier in this opinion, we do not reach the issue of standing.

Affirmed.