No. 89,446

STATE OF KANSAS, *Appellee*, v. MONICE NENA RAMIREZ,
*Appellant*.

(100 P.3d 94)

Opinion filed November 12, 2004.

*Nathan B. Webb*, assistant appellate defender, argued the cause and was on the briefs for appellant.

*Tamara S. Hicks*, assistant county attorney, argued the cause, and *John P. Wheeler, Jr.*, county attorney, and *Phill Kline*, attorney general, were with her on the briefs for appellee.

The opinion was delivered by

LUCKERT, J.: Monice Nena Ramirez was arrested in a bar known for drug activity after a law enforcement officer, who had known her for 8 years and knew her to have used drugs in the past, observed that she was holding a piece of a torn plastic baggie in her hand, was under the influence, and was uncharacteristically avoiding eye contact with the officer and acting nervous. A resulting search revealed cocaine and marijuana in her possession. She was charged, and, after her motion to suppress was denied, she was convicted and sentenced for possession of cocaine and possession of marijuana. Ramirez timely appealed. A majority of the Court of Appeals affirmed, ruling that under the totality of the circumstances, the officer had probable cause to arrest Ramirez and that the warrantless search could be upheld as a search incident to arrest. One member of the three judge panel dissented, concluding that the officer's observations justified only an investigatory stop and frisk but not an arrest and search. This court granted Ramirez' petition for review.

The Court of Appeals set out the facts accurately and concisely as follows:

"During the pretrial hearing, Deputy Randy Evans testified that he had been a deputy with the Finney County Sheriff's Office for 13 years and had training and experience in detecting and identifying controlled substances, including serving in the past on the Finney County DEA task force. On March 11, 2001, Evans was on patrol duty working the midnight shift. Shortly after midnight, he stopped at the El Maguey Club in Finney County for a routine bar check. The El Maguey

Club was a popular place for drug activity. During bar checks, a deputy would meet with the public and watch for criminal activity.

"Deputy Evans and another sheriff's deputy entered the El Maguey Club through the front door. Ramirez was in the open area in front of the club standing with another woman. Deputy Evans and Ramirez made eye contact as the deputies entered. Ramirez then avoided further eye contact with Deputy Evans. She appeared to be nervous and walked away from him. Deputy Evans had known Ramirez for at least 8 years, had seen her intoxicated and high on drugs, and knew she had used crack and powder cocaine. Deputy Evans considered Ramirez' actions unusual. Before he approached Ramirez, he noticed her eyes seemed to be glassy, watery, and wide open, which led him to believe Ramirez was under the influence of a narcotic.

"Deputy Evans followed Ramirez toward the north end of the club. He noticed she was fidgety and nervous and her left hand was clenched. Deputy Evans saw a portion of a clear plastic bag with a torn edge protruding from Ramirez' clenched fist. Knowing that cocaine was frequently packaged in plastic baggies, Deputy Evans believed Ramirez was concealing illegal drugs in her fist. He asked Ramirez what she had in her hand, and after several inquiries, Ramirez failed to respond. He then took hold of Ramirez' left wrist and asked her to open her hand, and she complied. At that time, Deputy Evans saw two separate portions of clear plastic bags containing a white powdery substance that looked like powder cocaine. He seized the baggies, placed Ramirez in handcuffs, and took her outside the bar."

Based upon these facts, the trial court denied Ramirez' motion to suppress, ruling that the officer had arrested the defendant at the time he took hold of her wrist and that there was probable cause to believe she had committed or was committing a felony. Thus, the arrest and subsequent search incident to arrest were lawful.

Where the facts material to a decision on a motion to suppress are not in dispute, and they are not in this case, the question of whether to suppress is a question of law over which this court has unlimited review. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003). Ramirez argues that the search of her which revealed the cocaine was unconstitutional and, therefore, the fruits of the search as well as the subsequent discovery of marijuana after she was placed in custody should be suppressed.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures, and a warrantless search is per se

unreasonable unless it falls within a recognized exception. *State v. Canaan,* 265 Kan. 835, 840, 964 P.2d 681 (1998) (citing *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 [1967]). See *State v. Johnson,* 253 Kan. 356, 362, 856 P.2d 134 (1993) ("[T]he wording and scope of the two sections are identical for all practical purposes. If conduct is prohibited by one it is prohibited by the other."). Kansas has previously recognized several exceptions to the Fourth Amendment search warrant requirement: consent; search incident to a lawful arrest; stop and frisk; probable cause to search accompanied by exigent circumstances, of which hot pursuit is one example; the emergency doctrine; inventory searches; plain view; and administrative searches of closely regulated businesses. *State v. Mendez,* 275 Kan. 412, 421, 66 P.3d 811 (2003).

In this case, the trial court found that the exception for a search incident to a lawful arrest applied. The State does not contest the trial court's finding that Deputy Evans arrested Ramirez when he grabbed her wrist. Therefore, we do not have before us the issue of whether this constituted a seizure of Ramirez. Rather, the issue is whether Ramirez' arrest was lawful.

It is recognized that a warrantless arrest of an individual in a public place for a felony is consistent with the Fourth Amendment if the arrest is supported by probable cause. *United States v. Watson,* 423 U.S. 411, 423-24, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976). As the United States Supreme Court has stated: "The long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime,' while giving 'fair leeway for enforcing the law in the community's protection.' " *Maryland v. Pringle,* 540 U.S. 366, 370, 157 L. Ed. 2d 769, 124 S. Ct. 795 (2003) (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 93 L. Ed. 1879, 69 S. Ct. 1302 [1949]).

Kansas statutes authorize a warrantless arrest when a law enforcement officer has probable cause to believe that the person is committing or has committed a felony. K.S.A. 2003 Supp. 22-2401. This court has defined probable cause as follows:

"Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

"When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt." *State v. Abbott*, 277 Kan. 161, Syl. ¶¶ 2-3, 83 P.3d 794 (2004).

Applying these standards, the Court of Appeals concluded that the following facts were sufficient to establish probable cause:

"In this case, in the context of having known Ramirez for at least 8 years, the facts relied on by Deputy Evans were: (1) Ramirez' unusual behavior in avoiding eye contact and moving away from a uniformed officer she knew; (2) her apparent state of being under the influence; (3) her fidgety and nervous behavior; (4) her presence in a bar known for drug activity; (5) her prior known use of cocaine; and (6) her clenched fist from which a torn edge of plastic protruded."

In seeking review, Ramirez argues, as concluded by the dissenter in the Court of Appeals, that while these facts may have raised a suspicion they were not sufficient for probable cause. In making this argument, she focuses upon each specific factor. For example, she argues that the fact she was at a bar known for drug activity did not justify a warrantless arrest and search because "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. [Citation omitted.]" *Ybarra v. Illinois*, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979). Additionally, she argues that other factors which contributed to the officer's suspicion had innocent explanations. People in bars are commonly intoxicated, people being questioned by law enforcement officers are commonly nervous, and people possess baggies for legitimate uses. Furthermore, although the officer knew Ramirez had been involved with drugs in the past, he did not testify as to how recent that involvement was.

However, as the Court of Appeals majority noted, a court must consider the totality of the circumstances, rather than evaluating

each suspicious factor in isolation and asking whether there was an innocent explanation for the activity. In support, the majority cited *United States v. Arvizu*, 534 U.S. 266, 151 L. Ed. 2d 740, 122 S. Ct. 744 (2002) (in determining whether reasonable suspicion exists to justify *Terry* stop, courts must look at totality of circumstances); and *United States v. Saucedo-Munoz*, 307 F.3d 344, 351 (5th Cir. 2002), *cert. denied* 537 U.S. 1178 (2003) (applying same principles to determination of whether probable cause exists for search). The majority pointed out that Kansas also applies the totality of the circumstances approach to determining whether reasonable suspicion exists, citing *State v. Crawford*, 275 Kan. 492, 496, 67 P.3d 115 (2003).

The majority's reasoning is supported by this court's recent reaffirmation that a probable cause determination depends upon the totality of the circumstances. See *State v. Abbott*, 277 Kan. at 164 (citing *State v. Payne*, 273 Kan. 466, 474, 44 P.3d 419 [2002]). When we examine the totality of the circumstances we view the information from the standpoint of an objectively reasonable police officer. See *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985). Thus, the fact that Deputy Evans testified that he believed there was probable cause does not end our consideration. Nor does the fact that he formed this belief, at least in part, upon the mistaken understanding that having drugs in one's blood stream constituted possession, a belief which does not reflect Kansas law. See *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983). Rather, what matters is whether Evans had knowledge of facts which would lead a reasonable person to believe a crime had been committed, specifically, that Ramirez was in possession of an illegal substance.

As the United States Supreme Court has recently stated:

" '[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' [Citation omitted.]

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. at 370-71 (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 76 L. Ed. 2d 527, 103 S. Ct. 2317 [1983]).

Where one or two factors may cause a reasonable suspicion, a combination of several factors may create probable cause. This point

is illustrated by drug cases considering whether the presence of portions of baggies, glassine packages, or similar suspicious packaging is sufficient to establish probable cause.

"[T]he observation of a person in possession of a certain kind of envelope or other packaging which on other occasions involving other persons has been found to conceal narcotics does not, standing alone, constitute probable cause. It has even been held that the viewing of a passing of such a container from one person to another is not enough, though it would seem that little more than that should be necessary. Certainly if money is passed in exchange there are then grounds to arrest, *and the small gap can also be filled by 'furtive or evasive behavior,'* prior information from an informant, or the fact that the locale 'has developed a reputation as a drug marketplace.' " (Emphasis added.) 2 LaFave, Search and Seizure § 3.6(b), pp. 299-301, and 2004 Pocket Part, pp. 47-49 (1996).

Several cases support these conclusions, including *In re J.D.R.*, 637 A.2d 849 (D.C. 1994) (finding probable cause to arrest where officer, after making a lawful traffic stop, observed a corner of a plastic baggie protruding from the defendant's cast and, after officer asked to see the baggie, defendant tried to hide it); *Commonwealth v. Alvarado*, 420 Mass. 542, 651 N.E.2d 824 (1995) (trooper who observed clear plastic material protruding from defendant's fist did not see controlled substance in plain view; trooper's observation of defendant stuffing what looked like glassine bag down front of his pants was not probable cause for arrest; however, in combination with additional factors probable cause was established); and *People v. McRay*, 51 N.Y.2d 594, 416 N.E.2d 1015, 435 N.Y.S.2d 679 (1980) (where experienced officer observed delivery of glassine envelopes—the hallmark of a drug transaction—in an area notorious for narcotics activity, probable cause was established).

Similarly, factors combine in this case. Ramirez appeared to be under the influence of drugs in a bar known for drug activity. She was fidgety and nervous and avoided a uniformed officer whom she knew. She clenched a torn plastic baggie in her hand, a portion of which was in the officer's clear view, and the officer knew that such baggies are commonly used to package cocaine. The officer knew that Ramirez had used drugs in the past. Considering the totality of these circumstances, we agree with the trial court and

the majority of the Court of Appeals: The facts and circumstances within the law enforcement officer's knowledge were sufficient to warrant a person of reasonable caution in the belief that the offense of possession was being committed. Because we conclude that there was probable cause to arrest Ramirez, the search, as a search incident to arrest, was lawful. Ramirez' arrest therefore did not contravene the Fourth and Fourteenth Amendments to the United States Constitution or Section 15 of the Kansas Constitution Bill of Rights.

Since we reach this holding we need not address the alternative issue raised by the State that the search was justified under the plain view doctrine.

Affirmed.

ALLEGRUCCI, J., dissenting: I disagree with the majority's holding that under the totality of the circumstances there was probable cause for the officer to arrest Ramirez. I agree with the rationale of Judge Johnson's dissenting Court of Appeals opinion, and I would reverse the district court.