In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4164

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NICHOLAS P. DIMODICA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05 CR 64—**Barbara B. Crabb**, *Chief Judge.*

ARGUED OCTOBER 17, 2006—DECIDED NOVEMBER 16, 2006

Before FLAUM, *Chief Judge,* and BAUER and EASTERBROOK*, Circuit Judges.*

BAUER, *Circuit Judge.* Nicholas DiModica was indicted for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). After the district court denied DiModica's motion to suppress the firearms seized from his house, DiModica pleaded guilty, reserving the right to appeal the denial of his motion. DiModica was sentenced to 12 months imprisonment. We affirm the district court's denial of the motion to suppress.

## I. Background

On March 17, 2004, DiModica's wife, Anita, met with Special Agent ("SA") Smith of the Wisconsin Department of Justice. Anita reported that she had been abused by her

husband on March 4, 2004. Anita had been married to DiModica for over ten years, and she had been living with DiModica in the same house in Cottage Grove, Wisconsin for the past eight years. Anita also told SA Smith that DiModica used drugs and likely had drugs and drug paraphernalia in their home; DiModica owned several firearms and likely had firearms in their home; and DiModica was a convicted felon. SA Smith instructed Anita to file a domestic abuse complaint with the local police.

Later that evening, Anita met with Officer Grimyser of the Cottage Grove Police Department. Officer Grimyser interviewed Anita regarding the March 4th incident and Anita filed her complaint. Officer Grimyser had another officer photograph Anita's injuries, which were sustained during the domestic abuse incident. Officer Grimyser determined that there was probable cause to arrest DiModica.[1] Wisconsin state law requires mandatory arrest for domestic abuse if the abuse is reported within 28 days of the incident.[2]

Anita told the officers that DiModica was likely at home,

---

[1] Dimodica waived his right to challenge whether the police had probable cause to arrest him for domestic abuse. First, DiModica did not challenge this issue at the evidentiary hearing. Second, in DiModica's opening brief, although he includes a footnote questioning the existence of probable cause, he argues that his arrest was illegal because the officers entered his residence without a warrant or his consent and not that the officers lacked probable cause. *See United States v. Harris*, 394 F.3d 543, 559 (7th Cir. 2005) (explaining that arguments not raised in appellant's opening brief are waived).

[2] Under Wisconsin Statute § 968.075, the officer shall arrest and take a person into custody if the officer has a reasonable basis for believing that one is committing or has committed domestic abuse and either the officer has a reasonable basis for believing there will be continued domestic abuse or there is evidence of physical injury to the alleged victim.

and she gave them a key to the home. Prior to leaving the precinct to arrest DiModica, SA Smith received written consent from Anita to enter her residence and search every part of the premises under her control. The consent form permitted the officers to take any illegal drugs, firearms, or other contraband found in the house. Anita also provided the officers with a map of the home and marked the location of her and DiModica's bedroom.

At approximately 11:00 p.m., SA Smith and Officer Grimyser drove to DiModica's residence in blizzard-like conditions. Although the officers had probable cause to make the arrest, they did not have an arrest warrant. The officers planned to tell DiModica that Anita had been injured in an automobile accident. They hoped that this would cause DiModica to invite them into his home without any confrontation. Once invited inside, the officers planned to arrest DiModica.

At the suppression hearing, SA Smith testified that he and Officer Grimyser approached DiModica's door together. Officer Grimyser knocked on DiModica's door and when DiModica answered, Officer Grimyser asked DiModica if he had a wife named Anita. DiModica answered affirmatively. Officer Grimyser then told DiModica that his wife had been badly injured in a car accident and asked if he could come inside to talk to him. According to both officers, DiModica stepped back and ushered the officers into the mudroom of the house. DiModica, who was shirtless, then told the officers that he was going to retrieve a shirt from another room in the house. DiModica did not instruct the officers to wait outside while he retrieved the shirt. When DiModica returned to the mudroom, Officer Grimyser arrested him for domestic abuse, placed him in handcuffs, and escorted him to the squad car.

Contrary to the officers' testimony, DiModica testified that SA Smith stood by the squad car while he spoke to

Officer Grimyser through his screen door. DiModica claims that he did not invite Officer Grimyser into the house and Officer Grimyser never asked to come into his house. DiModica testified that he specifically told Officer Grimyser to stay outside prior to retrieving his sweat-shirt. DiModica also testified that when he returned to the front door, Officer Grimyser had entered his home with-out his permission.

The parties agree that both DiModica and Anita were living in the house together on the day of the arrest. The parties also agree that the officers never asked DiModica for his consent to search the home, and DiModica never told the officers that they could not search the home. After arresting DiModica, the officers placed him in the squad car and took him to the police station. The officers then began searching the residence pursuant to Anita's consent. Anita met the officers at her home and helped the officers conduct their search. The officers found a shotgun, a .22 caliber revolver, and a .22 caliber pistol in the home. DiModica subsequently admitted that the firearms belonged to him.

As DiModica was a convicted felon, he was charged with violating 18 U.S.C. § 922(g)(1), which prohibits a convicted felon from knowingly possessing a firearm. DiModica filed a motion to suppress the evidence, arguing that the police illegally entered his home without his permission to effectuate his arrest; the illegal arrest tainted the subsequent search, and the seized evidence should be suppressed as the fruit of the poisonous tree; and his presence nullified Anita's consent to search the home. On August 5, 2005, the magistrate judge found that Anita's consent permitted the police to search DiModica's home. Additionally, the magistrate found that even if the police illegally entered DiModica's home to make the arrest, the evidence obtained during the subsequent search would not be suppressed because none of the evidence that the government intended to introduce at trial was obtained as

a result of the arrest. On August 17, 2005, the district court adopted the magistrate judge's report and denied DiModica's motion to suppress the evidence. DiModica timely filed this appeal.

## II. Discussion

In this appeal, DiModica makes two arguments. First, DiModica argues that his arrest was illegal because the officers entered his home without a warrant or his consent in violation of the Fourth Amendment. DiModica contends that the illegal arrest tainted the subsequent search and the evidence should be suppressed as the fruit of the poisonous tree. Second, he argues that had he not been illegally arrested and removed from the scene, he would have remained in his home and refused to consent to the search to which his wife had agreed.

### A. Consent to Enter DiModica's Home and His Arrest

DiModica argues that his arrest was illegal because the officers entered his home without an arrest warrant or his consent. In the absence of an arrest warrant, consent or exigent circumstances permit officers to enter a residence to effectuate an arrest. *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001). When reviewing a denial of a motion to suppress evidence, we review legal questions *de novo* and factual findings for clear error. *United States v. Fields*, 371 F.3d 910, 914 (7th Cir. 2004). Whether a person consents to allow an officer into his or her home is a question of fact. *Id.* "A factual determination is clearly erroneous only if, after considering all of the evidence, the reviewing court is left with the firm conviction that a mistake has been committed." *United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir. 1995).

DiModica argues that the evidence presented at the suppression hearing established that he directed the officer to wait outside while he retrieved his shirt. In support of this argument, DiModica contends that it is inherently incredible for the district court to conclude that after being invited into DiModica's home, the officers would allow DiModica, who was possibly armed and dangerous, to retrieve a shirt from another room outside of their presence.

The magistrate judge observed the testimony of DiModica and the two officers, made credibility determinations, and reviewed all the exhibits offered by both parties at the suppression hearing. Although the magistrate judge admitted that it was difficult "to determine which version of events is more accurate because neither account is completely logical," the court chose to credit the officers' version of events. Specifically, the magistrate judge found that "Officer Grimyser . . . crossed the threshold into the mudroom without protest from DiModica" and that "DiModica did not direct Officer Grimyser (or Agent Smith) to wait outside on the stoop in the blizzard while he dressed."

The magistrate judge's findings, which were adopted by the district court, are not clearly erroneous. That there were blizzard-like conditions that night in Cottage Grove and the officers had told DiModica that Anita had been badly injured in an accident permit the inference that a concerned husband invited the officers into his house. Because the arrest was based upon probable cause and DiModica consented to the officers entering his residence, DiModica's arrest was legal and did not taint the officers' subsequent search.

### B.  Consent to Search DiModica's Home

A search conducted without a warrant is considered *per se* unreasonable and a violation of the Fourth Amendment

unless the search falls within a specifically established exception. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967). An exception to the general rule permits searches based upon the voluntary consent of a person authorized to provide consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973). "The consent of one who possesses common authority over premises or effects is valid against the absent, non-consenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170, 94 S. Ct. 988, 993 (1974).

The district court found that Anita's consent to search the residence was sufficient based upon the Supreme Court's holding in *Matlock*. In *Matlock*, officers arrested the defendant in the yard of his residence. *Matlock*, 415 U.S. at 166. The officers never asked the defendant (a boarder) which room he occupied or whether he would consent to a search. *Id.* Instead, the officers placed defendant in a nearby squad car and then obtained permission to search defendant's residence from one of his co-tenants. *Id.* at 179. The Court concluded that the officers did not have to obtain defendant's consent prior to the search when a third party with joint occupancy consented to the search.

DiModica argues that his case should instead be governed by *Georgia v. Randolph*, ___ U.S. ___, 126 S. Ct. 1515 (2006), which was decided by the Supreme Court after his suppression hearing. In *Randolph,* the defendant's wife complained to the police regarding a domestic dispute. *Randolph*, 126 S. Ct. at 1519. When the officers arrived at their residence, the defendant's wife told the officers that her husband was a drug user. *Id.* The officers asked the defendant for permission to search his house, and he refused. *Id.* The police then turned to the defendant's wife and asked for her consent to search. *Id.* She consented, and the police searched the residence. *Id.* The Court found that the warrantless search was unreasonable and held that "a

physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Id.* at 1528. DiModica argues that *Randolph* controls because had he not been illegally arrested and removed from the scene, he would have refused to allow the police to search his home.

The present matter is distinguishable from *Randolph*. Unlike the defendant and his wife in *Randolph*, DiModica and his wife were not standing together at the doorway, one consenting to the search while the other refused. The officers never asked DiModica for permission to search his house. Additionally, DiModica never told the officers that they could not search his house. The Supreme Court in *Randolph* preserved its holding in *Matlock*, stating:

> we have to admit, we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

*Randolph*, 126 S. Ct. at 1527. DiModica argues that the police removed him from the entrance of his house for the sake of avoiding a possible objection to the subsequent search. However, DiModica fails to distinguish his case from *Matlock*.

We agree with the district court that there are differences between the instant case and *Matlock*, but the differences are immaterial. The officers did not remove DiModica to avoid his objection; they legally arrested DiModica based on probable cause that he had committed domestic abuse. Once DiModica was arrested and removed from the scene, Anita's consent alone was valid and permitted the officers to legally search the residence.

### III.  Conclusion

For the reasons stated above, we AFFIRM the district court's denial of DiModica's motion to suppress.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*