(165 P.3d 304)
No. 96,418

STATE OF KANSAS, *Appellant,* v. JARED L. CHILSON, *Appellee.*

Opinion filed August 24, 2007.

*Micheal A. Ireland,* county attorney, for appellant.

*Jonathan B. Phelps*, of Phelps Chartered, of Topeka, for appellee.

Before CAPLINGER, P.J., ELLIOTT, J., and BUKATY, S.J.

CAPLINGER, J.: In this interlocutory appeal, the State challenges the district court's order granting defendant Jared Chilson's motion to suppress drug evidence discovered in a search of the residence Chilson shared with his father. Relying upon *Georgia v. Randolph*, 547 U.S. 103, 164 L. Ed. 2d 208, 126 S. Ct. 1515 (2006), Chilson argues his father's consent to search the shared residence was invalid and the resulting warrantless entry and search unreasonable, because Chilson, who was detained nearby, was not given an opportunity to refuse consent.

We hold that in the absence of evidence that the defendant expressly objected to the search, or that officers specifically removed him from the home for the sake of avoiding a possible objection, the consent to search given by the defendant's father satisfied the consent exception to the Fourth Amendment's prohibition against warrantless searches and seizures. We thus reverse the district court's order and remand to the district court for further proceedings.

*Factual and procedural background*

Twenty-two-year-old defendant Jared Chilson (Chilson) lived at home with his father, Robert Chilson. Chilson had his own bedroom and access to a shared bathroom.

On July 12, 2004, the Jackson County Sheriff's dispatcher received a report of a domestic disturbance at the Chilson residence. The dispatcher's notes indicate: "[Robert Chilson is] w/son Jarod [*sic*]—thinks he is doing [narcotics] when dad is not home—wants him off property—not violent at this point."

Deputy Ryan Bruggeman testified that when he arrived at the Chilson home, he had been informed only that there was a domestic dispute between Chilson and his father. Corporal Brad Hanika and Detective Carolyn Clark were on the scene. As was police procedure on domestic dispute calls, officers had separated the father and son so that they were out of sight and hearing of each other; Clark detained Jared Chilson outside.

Meanwhile, inside, the father told Bruggeman that he had found a baggie of marijuana in Chilson's room, and when he confronted his son, Chilson "got in his face" in a threatening manner; took the bag; and flushed it down the toilet. The father granted the officers permission to look throughout the house, specifically in the bathroom, where officers discovered two or three fragments of marijuana in the toilet. Officers did not ask Chilson for his consent to the search.

After the search, Bruggeman *Mirandized* Chilson and asked if he wanted to talk. Chilson responded affirmatively and told Bruggeman he and his father had an argument and his father had attempted to kick him out of the house. When asked about marijuana, Chilson remained silent.

After the State charged Chilson with assault and possession of marijuana, he filed a motion to suppress the drug evidence, in which he argued the officers' warrantless search violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, § 15 of the Kansas Constitution Bill of Rights, and K.S.A. 22-3216, and the trace elements of marijuana found in the toilet constituted fruit of the poisonous tree.

After a hearing, the district court denied the motion, finding Chilson's father had consented to the search and Chilson had no expectation of privacy in the "flushed material."

Chilson subsequently renewed his motion to suppress based upon a recent decision of the United States Supreme Court, *Randolph*, 547 U.S. 103.

On rehearing the suppression motion, the district court made further findings of fact. It found Chilson was not "absent" from the scene but was segregated by officers pursuant to protocol, and Chilson had communicated with officers and was available for inquiry. The district court further noted that at the time of the incident, case law did not require the police to obtain Chilson's consent to search once they had received the father's permission.

However, having reviewed *Randolph,* the district court concluded the officers could have obtained a search warrant based upon the father's statements. It further concluded it would not have been unreasonable for police to have sought Chilson's consent

to the search. Based upon these findings, the district court reconsidered its earlier ruling and found the search was unreasonable because it was without a warrant and without Chilson's consent, and it sought fruits and instrumentalities of an offense unrelated to the charge the officers were called to investigate. The State appeals pursuant to K.S.A. 22-3603.

*Standard of review*

When reviewing a district court's ruling on a motion to suppress, we determine whether the factual underpinnings of the decision are supported by substantial competent evidence. We exercise de novo review of the ultimate legal conclusion drawn from those facts. To the extent the facts material to the district court's decision are not in dispute, the question of whether to suppress is purely a question of law over which we have unlimited review. *State v. Anderson*, 281 Kan. 896, 900-01, 136 P.3d 406 (2006); *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004). Moreover, the State bears the burden to demonstrate that a challenged search or seizure was lawful. See *Anderson*, 281 Kan. at 901; *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003).

*Discussion*

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights generally prohibit the warrantless entry of a person's home. *Payton v. New York*, 445 U.S. 573, 576, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980); *State v. Mendez*, 275 Kan. 412, 420-21, 66 P.3d 811 (2003). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, see *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973), or from a third party who possesses, *United States v. Matlock*, 415 U.S. 164, 170, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974), or who reasonably appears to possess, *Illinois v. Rodriguez*, 497 U.S. 177, 182-89, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990), common authority over the premises. See also *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006); *Mendez*, 275 Kan. at 420-21.

In *Matlock*, the defendant, a suspect in a bank robbery, was arrested in the yard of a house where he lived with a woman named Gayle Graff and her relatives. Defendant was detained in a squad car while officers went to the door. Graff answered the door, dressed in a robe with a baby in her arms, and consented to a search of the house. 415 U.S. at 166. When defendant contested the trial court's denial of his motion to suppress evidence discovered during the search, the Court held that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." 415 U.S. at 170.

The Court reiterated and clarified this tenet in *Rodriguez*. There, the defendant had severely beaten his girlfriend. She called police from her mother's home and took police to the defendant's apartment. She told them that she lived there with him, unlocked the door with a key, and gave them permission to enter. Police discovered the defendant asleep in a bedroom and seized drug evidence which formed in part the basis for the defendant's charges. Unbeknownst to the police, the girlfriend had in fact moved out of the apartment several weeks earlier and did not have actual authority to consent to the search of the defendant's apartment. 497 U.S. at 179-80. The Supreme Court nonetheless held the warrantless entry would be valid if police, at the time of entry, reasonably believed the girlfriend had common authority over the premises—objective reasonableness being the critical inquiry. 497 U.S. at 188-89.

Kansas has absorbed the holdings of *Matlock* and *Rodriguez* and adopted the third-party consent to search exception to the warrant requirement. *Porting*, 281 Kan. at 328 (discussing and applying both *Matlock* and *Rodriguez*); *State v. Ratley*, 16 Kan. App. 2d 589, 591, 594-95, 827 P.2d 78 (1992) (explicitly adopting the third-party consent by common authority and apparent authority rules of *Matlock* and *Rodriguez* in Kansas); see also *State v. Savage*, 27 Kan. App. 2d 1022, 1026, 10 P.3d 765, *rev. denied* 270 Kan. 903 (2000) (noting Kansas has adopted the common authority and apparent authority rules). And it was upon this controlling authority that the

district court in this case initially denied Chilson's motion to suppress.

The impetus for the district court's about-face on the suppression issue was the recent United States Supreme Court case of *Randolph*, in which the Court distinguished its holdings in both *Rodriguez* and *Matlock*.

In *Randolph*, the defendant's estranged wife called police to report a domestic dispute. She told responding officers that the defendant was a drug addict who had "items of drug evidence" in the residence. 547 U.S. at 107. The defendant arrived at the residence shortly after the police arrived, and he refused the officers' request for permission to search the residence. Officers then turned to the defendant's wife, who readily gave them permission to search. Police seized a section of a straw covered with a powdery substance. After receiving a warrant, police returned and seized further evidence of drug use, which formed the basis for charges against the defendant. 547 U.S. at 107.

The trial court denied the defendant's motion to suppress based on the wife's common authority to consent to the search under *Matlock* and *Rodriguez*. The Georgia Court of Appeals and Georgia Supreme Court concluded the evidence should have been suppressed. To resolve a split of authority on whether one occupant may give effective consent to search a shared premises in the face of another occupant's express refusal to permit the search, the United States Supreme Court granted certiorari and affirmed the Georgia Supreme Court. 547 U.S. at 108.

The *Randolph* Court held that a physically present co-occupant's explicit refusal to permit entry renders a warrantless entry and search unreasonable and invalid as to the co-occupant, even though another present resident consented to the search. 547 U.S. at 122-23. Specifically, it held "[d]isputed permission is thus no match for [the] central value of the Fourth Amendment." 547 U.S. at 115. A co-occupant "may be able to deliver evidence to the police, [citation omitted], and can tell police what he knows, for use before a magistrate in getting a warrant." 547 U.S. at 116. These options avoid "relying on a theory of consent that ignores an inhabitant's refusal to allow a warrantless search." 547 U.S. at 116. Absent some

other circumstance justifying a warrantless search, police may not search with the consent of one co-occupant while the other is "standing at the door and expressly refusing consent." 547 U.S. at 118-19.

Significantly, the *Randolph* court reconciled its holding with that of *Matlock* and *Rodriguez*:

"If [*Matlock* and *Rodriguez*] are not to be undercut by today's holding, we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

"This is the line we draw, and we think the formalism is justified. So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." 547 U.S. at 121-22.

The facts of this case fall somewhere along the continuum of reasonableness established by *Matlock* and *Randolph*. Here, the co-occupant defendant was not absent, as was the defendant in *Matlock*. But, unlike the co-occupant defendant in *Randolph*, he did not stand at the door and object to the search. However, the district court did not find the officers removed the defendant "for the sake of avoiding a possible objection"; rather, they removed him pursuant to protocol. Nor did the evidence indicate the defendant voiced an objection despite the officers' failure to inquire. Moreover, if the defendant had been asked for his consent to search, it is not a foregone conclusion that he would have refused: suspects often consent, albeit imprudently. See *Randolph*, 547 U.S. at 122; see, *e.g.*, *State v. Moore*, 283 Kan. 344, 347, 360, 154 P.3d 1 (2007); *State v. Pennington*, 281 Kan. 426, 428, 132 P.3d 902 (2006); *State v. Edgar*, 281 Kan. 47, 49-50, 127 P.3d 1016 (2006).

In determining where this case falls on the continuum, we find guidance in recent post-*Randolph* cases from other jurisdictions with similar factual circumstances.

For instance, in *United States v. DiModica*, 468 F.3d 495, 497-98 (7th Cir. 2006), a wife, who was not present at the home, re-

ported a domestic assault and told police her husband, DiModica, was a felon who possessed guns and drugs. She gave police a key to their house and consent to search. Armed with an arrest warrant, officers knocked on the door, confirmed DiModica's identity, arrested him, and removed him from the home. They did not ask his permission to search. The wife met officers at the home afterward, and police discovered items that formed the basis of charges unrelated to the domestic abuse. DiModica argued that had he not been arrested and removed from the scene, he would have refused to allow the police to search his home. The Seventh Circuit distinguished the case from *Randolph,* noting that unlike the defendant and his wife in *Randolph,* DiModica and his wife were not standing together at the doorway, one consenting to the search while the other refused. The officers did not ask DiModica for permission to search, and DiModica did not advise the officers they could not do so.

The Seventh Circuit found Dimodica's case was not materially distinguishable from *Matlock.* The officers did not remove DiModica to avoid his objection; they legally arrested DiModica based on probable cause he had committed domestic abuse. Once DiModica was arrested and removed from the scene, the wife's consent alone was valid and permitted the officers to legally search the residence. See also *United States v. Wilburn,* 473 F.3d 742 (7th Cir. 2007) (no Fourth Amendment violation where officers, after arresting defendant and placing him in squad car outside his apartment, received consent from defendant's girlfriend to search apartment where defendant lived with girlfriend; defendant was not physically present when girlfriend consented to search, made no objection, and officers had not deliberately removed him from area to avoid hearing him invoke objection to the search); *United States v. Parker,* 469 F.3d 1074, 1077 (7th Cir. 2006) (where there was no evidence that the defendant was asked for consent to search and refused, or that he objected in any way, court distinguished case from *Randolph*).

Similarly, in *United States v. Uscanga-Ramirez,* 475 F.3d 1024 (8th Cir. 2007), officers responded to a mother's report that her son-in-law was holding her daughter against her will in their home.

Police arrived at the residence and found the mother sitting in a parked car in front of the home. The daughter then walked out the front door. In response to police questions, the daughter said she was not being held against her will; she was leaving with her mother; her husband had locked himself in a bedroom with a gun because he was upset that she was leaving; but he had not threatened to harm anyone, including himself. The police asked for her permission to enter the residence and check on her husband, and she consented. Officers found the locked bedroom and the husband opened the door. He advised officers he didn't have a gun, but police discovered a loaded gun under a pillow in the middle of the bed. He was charged with being an illegal alien in possession of a firearm and ammunition.

The Eighth Circuit in *Uscanga-Ramirez* distinguished *Randolph* based upon the lack of any evidence that defendant expressly refused the officers' entry into the home.

Federal district courts and other state courts also have concluded that absent a defendant co-occupant's express objection, third-party consent to a search is a valid exception to the warrant requirement. See, *e.g., United States v. Church*, 2007 WL 689890, at 2 (W.D. Mich. 2007) (unpublished opinion) (*Randolph* distinguishable where present defendant raised no objection to entry, which co-occupant girlfriend invited); *United States v. Groves*, 2007 WL 171916, at 6 (N.D. Ind. 2007) (unpublished opinion) (defendant refused to consent to search on night shots fired from his house; police returned 2 weeks later and obtained consent from defendant's live-in girlfriend who had actual and apparent authority to consent; court held police did not procure defendant's absence and his earlier objection was insufficient to invalidate girlfriend's later consent); *United States v. McCurdy*, 480 F. Supp. 2d 380, 390 n.9 (D. Me. 2007) (*Randolph*'s holding expressly limited to defendants who are physically present and expressly refuse consent; it does not extend to absent but potentially reachable defendants who, if reached, might refuse consent); *Starks v. State*, 846 N.E.2d 673, 682 n.1 (Ind. App. 2006) (*Randolph* distinguishable where, when co-tenant consented, defendant was not physically present, and was physically present for another portion of search but did not express refusal to consent to the search); but see *United*

*States v. Henderson*, 2006 WL 3469538 (N.D. Ill. 2006) (unpublished opinion) (wife gave officers responding to her domestic battery call a house key; they entered home she shared with defendant, who told officers to "get the fuck out of my house"; officers acted unreasonably under *Randolph* in removing defendant and searching home based on wife's consent given defendant's explicit objection).

As the Utah Court of Appeals noted in *State v. Udell*, 141 P.3d 612, 613 (Utah App. 2006), *Randolph* " 'invites a straightforward application of the rule that a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant.' "

Here, in the absence of evidence that Chilson expressly objected to the search, or that officers specifically removed him from the home "for the sake of avoiding a possible objection," we hold the consent given by the defendant's father satisfied the consent exception to the Fourth Amendment's prohibition against warrantless searches and seizures. We believe our decision is consistent with *Matlock* and *Rodriguez* and, under these facts, does not offend the holding in *Randolph*.

Further, we note the defendant provides no compelling reason for reaching a different conclusion. In fact, rather than distinguishing *Matlock* or the extrajurisdictional authority that cuts against his position, the defendant essentially asks this court to reweigh evidence and reevaluate the credibility of the responding officers. We decline to do so. See *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004).

Accordingly, we reverse the district court's decision granting Chilson's motion to suppress and remand for further proceedings.

Reversed and remanded.