NOT DESIGNATED FOR PUBLICATION

No. 119,721

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CHRISTOPHER PAYTON,
*Appellee*.


MEMORANDUM OPINION

Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Opinion filed February 21, 2020. Affirmed.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Brenda M. Jordan*, of Brenda Jordan Law Office LLC, of Manhattan, for appellee.

Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.

BUSER, J.: This is the State's interlocutory appeal of the district court's suppression of incriminating evidence found in a vehicle driven by Christopher Payton. After a traffic stop, Deputy Justin Young walked his drug-detection dog, Turbo, around Payton's vehicle. The deputy opined that Turbo detected drugs inside the vehicle and it was searched. As a result, drugs and paraphernalia were found in two locations inside the vehicle. After the filing of criminal charges, Payton filed a motion to suppress evidence contending that Deputy Young did not have probable cause to search the vehicle because of insufficient evidence that Turbo alerted to the presence of drugs. The district court

1

granted Payton's motion and suppressed the evidence. The State filed a timely interlocutory appeal. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2017, Deputy Young observed Payton driving his vehicle with an expired registration. Upon stopping the vehicle, the deputy discovered the vehicle's liability insurance had also expired. At the conclusion of the stop, Deputy Young informed Payton that he was free to leave but the vehicle had to remain at the scene. After Payton and his passenger left, the deputy walked Turbo around the vehicle a few times. Based on Turbo's sniffing and behavioral changes, Deputy Young determined that Turbo alerted to drugs in the vehicle.

Deputy Young began his vehicle search in the front passenger area but he did not find any contraband. In the backseat, however, the deputy found a backpack which contained a scale with a green leafy substance on it and a pill bottle that contained two plastic baggies with methamphetamine inside. Deputy Young did not find anything in the trunk. Under the driver's seat, however, the deputy found a bag containing smaller plastic baggies of Alprazolam, Oxycodone, and methamphetamine residue.

Payton was charged with possession of methamphetamine, possession of Oxycodone, possession of Alprazolam, possession of drug paraphernalia, a registration violation, no proof of insurance, and failure to display a license plate. Before trial, Payton filed a motion to suppress all evidence obtained from the search of the vehicle.

At the suppression hearing, Deputy Young testified that he is Turbo's only handler and the dog's certification is limited to Deputy Young. Turbo is certified in detecting odors of marijuana, cocaine, heroin, and methamphetamine through the Kansas Police Dog Association and the National Police K-9 Association. When Turbo detects one of

these drugs, he notifies the deputy by alerting "to the odor and then he will give a final response once he comes to the source."

Deputy Young testified that he is trained to detect Turbo's alerts. He testified that Turbo's "alert" is a behavioral change whereby Turbo will go from doing a general sniff to a detailed sniff. This means Turbo will "close his [mouth], and he'll start kind of checking in areas." Turbo can start "bracketing" which means he will go from point A to point B in order to locate the center of where the odor is coming from. Then, if Turbo is able, he will indicate that he has detected the center of the odor of drugs by giving his final response—sitting down.

Regarding the drug detection procedure he and Turbo ordinarily follow, Deputy Young testified he does two passes around the vehicle with Turbo, one counterclockwise and one clockwise. Then, depending on the dog's response, the officer and Turbo will go back in detail "trying to locate the source of where he was trying to—or back to the area he alerted in trying to find the source." Deputy Young testified that going back in detail meant to "[h]elp him kind of search, direct him in certain directions, direct him up, direct him down" or by doing a different pass.

The State admitted a videotape which recorded Turbo's activities around the vehicle. Deputy Young testified as the video was played. During the search of the vehicle, Deputy Young testified that Turbo alerted to the rear passenger door/wheel area on the right side of the vehicle and the trunk.

Regarding the rear passenger door, Deputy Young testified that Turbo alerted through a behavioral change called "detailing" which occurs when the dog closes its mouth. The deputy testified that Turbo's mouth was not completely closed during the deployment. "[H]e'll keep it slightly open and when he gets an odor, you'll see him cinch up and you'll see that nose starts working. Instead of breathing through the mouth and

3

nose, he'll switch to [sniffing] directly out of his nose." When the deputy told Turbo to detail, Turbo shut his mouth to sniff. Deputy Young testified that Turbo attempted to sit near the passenger side door. However, the deputy believed Turbo's left leg hit the steep slope next to the roadway which unsettled him and resulted in Turbo not sitting down at that point.

As to the trunk area, Deputy Young testified that Turbo alerted when he changed his behavior by sniffing the trunk with his mouth closed, stopped, froze in place, and looked at him. Deputy Young did not go back and detail the license plate area because, based on Turbo's behavioral changes, Turbo had shown the deputy sufficient indication of the presence of drugs.

On cross-examination, Deputy Young testified that Turbo will sit if he finds the source of the drug odor. Whether that occurs depends on the strength of the odor coming from the vehicle. According to Deputy Young, Turbo has not had any false-positive alerts. Deputy Young acknowledged that an officer removed the license plate from the rear of the vehicle moments before Turbo was deployed, but he testified that the dog had never indicated or alerted to any area where there was a human odor.

After hearing the testimony, reviewing the videotape three times, and considering counsels' arguments, the district court granted the motion to suppress evidence. First, the district court found that Officer Young and Turbo were fully certified and trained in drug detection. The district court stated that "the real question in this case is whether the evidence is sufficient to show that the dog alerted, to establish probable cause to search this vehicle." Based on the district court's legal research, the court concluded that probable cause ordinarily is established by the drug-detection dog alerting to the odor of drugs or by giving a final indication, such as sitting.

4

The district judge found that Turbo "did not give a final indication in this case, in the Court's view, nor can the Court interpret what the dog was seen doing on the videotape [as] an attempt to make a final indication. I just don't see it. And I'm the trier of fact, and I don't see it."

The district court then questioned "whether the conduct of the dog testified to by its handler was a sufficient alert to establish probable cause." The district court compared Turbo's behavior with the behavior of the drug-detection dog in *United States v. Parada*, 577 F.3d 1275 (10th Cir. 2009). In that case, the dog did not give a final indication, although its handler, according to the district court here, "testified that the dog's body stiffened, and his breathing became deeper and more rapid and he tried to jump in a window. A lot more, I guess I referred to, as aggressive behavior by the dog than what was testified to in this case."

The district judge concluded:

"Now, in this case, and the Court watched the video, two things stuck out to me, and that is, in my view, the dog appears to simply be sniffing around the vehicle. Stops at the license tag, and stops at the right rear passenger side. Also appeared to stop a little bit on the driver's side. I couldn't see what was happening at the front of the vehicle. But from comments that the handler could have been saying on the video, it didn't seem that the handler was real confident that there had been an actual alert happening. And in fact, when at the very tail-end when discussing with the other officers, they were trying to come up with different explanations as to why he had stopped at the license plate. Maybe there's some air pockets or maybe—I believe actually Officer Riat was—could be heard being asked if she had been handling any drugs earlier in the day, trying to come up with some explanation.

"They read into the record, and the officer testified, that these detailed sniffing and bracketing were things that his dog, as I understood the testimony through his experience with this dog, he has learned as an indication by the dog that it has alerted to

the odor of a narcotic. And when his mouth is closed, of course, I couldn't see whether the dog's mouth was closed or half-open, or what the case was.

. . . .

"There's just not enough reliable evidence for this Court to find that the dog did alert in this case to establish probable cause.

. . . .

"THE COURT:  . . . [T]his was very minimal conduct by the dog. It's not what I would expect. If there had been—I would have expected that dog to have—to have indicated, to have sat at the license plate or to have been more interested in the license plate. I just don't think there was enough. I'm sure that this dog does a lot better job on the other different cases, but not in this one. So I'm going to grant the defendant's Motion to Suppress. Evidence seized as a result of the search is not admissible in court."

The State filed a timely notice of interlocutory appeal.

ORDER TO SUPPRESS EVIDENCE

When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of the decision for substantial competent evidence but the legal conclusion drawn from those facts receives de novo review. *State v. Lowery*, 308 Kan. 359, 364, 420 P.3d 456 (2018). Substantial competent evidence is evidence that a reasonable person could accept as being adequate to support a conclusion. The State bears the burden of proving the search and seizure was lawful. Our court may not reweigh the evidence, assess the credibility of the witnesses, or resolve evidentiary conflicts. 308 Kan. at 364.

On appeal, the State contends there was insufficient evidence to support the district court's finding that Turbo's behavior did not amount to an alert. The State argues the district court completely disregarded Deputy Young's testimony regarding Turbo's changes in behavior. The State concedes that the video and testimony support a

6

conclusion that Turbo did not sit or give a final indication, but the State argues Turbo attempted to sit at the rear door despite the sloping terrain.

It is well established in Kansas that whether probable cause exists to search a vehicle is determined by examining the totality of the circumstances. *State v. Brewer*, 49 Kan. App. 2d 102, 112, 305 P.3d 676 (2013). When analyzing whether probable cause exists, "we consider '"all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt."'" *State v. Knight*, 55 Kan. App. 2d 642, 647, 419 P.3d 637 (2018) (quoting *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 [2004]). In this case, the only basis for a finding of probable cause is that Turbo alerted on the vehicle indicating the presence of drugs. There was no other evidence that the vehicle contained contraband.

Kansas courts hold that probable cause exists for a warrantless search of a motor vehicle when a drug-detection dog exhibits an alert rather than a final indication. "[A] reliable K-9 alert may alone supply the probable cause necessary to conduct a warrantless vehicle search." *Brewer*, 49 Kan. App. 2d at 113. But, "there must be some evidence that the dog's behavior reliably indicated the likely presence of a controlled substance." *State v. Barker*, 252 Kan. 949, 959, 850 P.2d 885 (1993).

In the present case, the evidence was mixed regarding whether Turbo alerted to the presence of drugs. While Deputy Young testified to behavioral changes he observed in Turbo which, based on his training and experience, indicated an alert, the evidence was not particularly strong or consistent under the circumstances.

For example, based on the videotape, the district court was unable to corroborate Deputy Young's testimony that Turbo attempted to execute a final indication by sitting down but slipped in the process. Although the State claims the district court totally disregarded Deputy Young's testimony, we disagree. The record reflects that the district

7

court compared Deputy Young's testimony with what it saw on the videotape and could not reconcile the two accounts of Turbo's actions. This simply raised doubt as to the quality of the evidence supporting the State's contention that Turbo was attempting a final indication at the time of the slip. Having viewed the video as an appellate court, we have no reason to doubt the district court's factual finding in this regard.

The district court also noted that the officers at the scene were not confident that Turbo's alert at the trunk indicated the presence of drugs because an officer had removed the license plate from the vehicle shortly before Turbo stopped at that area. There were obvious questions raised by the officers that the license plate removal by another officer shortly before Turbo passed by could have affected his behavior. Moreover, Turbo only alerted on the trunk on one occasion despite walking past the trunk more than once. Again, the evidence raised questions whether Turbo's behavior indicated an alert to the presence of drugs or some other cause.

Additionally, throughout the deployment of Turbo around the vehicle, Deputy Young is heard saying to the dog, "Nothing" at two points and then saying, "You are not going to give me anything?" At other times, the deputy testified that Turbo would sniff a particular area and then glance back to him. "I can't explain why or anything like that, but he'll—then he'll give me that—his glance back over." Deputy Young stated that Turbo's glancing look sometimes means Turbo has alerted.

Deputy Young explained:

> "And on like weak odors, sometimes [Turbo] will be hesitant to sit because he's not so sure the extent of the source . . . . And in cars it's hard for them to do because [the drugs] can be buried in backpacks, inner consoles, those kinds of things.
>     "So a lot of times depending on how strong the odor is and where its coming from, you'll see just behavioral changes or he'll stop like that and just stand there."

The United States Supreme Court has written that in determining whether a drug-detection dog is reliable, the question is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida. v. Harris*, 568 U.S. 237, 248, 133 S. Ct. 1050, 185 L. Ed. 2d 61 (2013).

Based on the testimony presented, it is apparent that Turbo's ability to detect drugs is affected by the strength of the scent, location of the drugs, and environmental conditions. It is also clear that Turbo displays a range of behaviors based on whether the scent is weak or strong, diffuse or concentrated. Turbo's behavioral changes in this case were slight and not indicative that the dog had detected a strong, particularized odor of drugs. Given this evidentiary landscape, we understand the district court's determination that "[t]here's just not enough reliable evidence for this Court to find that the dog did alert in this case to establish probable cause. . . . [T]his was very minimal conduct by the dog." Upon our review of all the evidence in the record on appeal, we are persuaded there is substantial competent evidence to support the factual underpinnings of the district court's suppression ruling.

On a related matter, the State argues that the district court improperly relied on *United States v. Wilson*, 995 F. Supp. 2d 455 (W.D.N.C. 2014), in concluding that "Turbo did not alert." But this argument is misplaced because the district court specifically stated it was not basing its decision on this case. The district court's legal conclusion was not error.

EXCLUSION OF EVIDENCE

During the suppression hearing, the following colloquy occurred during the direct examination of Deputy Young by the prosecutor:

9

"Q. You ended up searching that vehicle, correct?

"A. Correct.

"Q. Did he find anything in the vehicle?

"[THE DEFENSE]: Objection; not relevant.

"[THE PROSECUTOR]: Well, I would argue it's relevant because of the location of where he found the items in reference to where the dog sniffed.

"[THE DEFENSE]: It doesn't matter if he found them or not. He made that decision to search the vehicle.

"THE COURT: Sustained."

On appeal, the State argues the district court erred in refusing to allow the State to ask if anything was found in the vehicle. The State explains:

"Had he been able to answer, Deputy Young would have testified, as stated in his sworn affidavit, that he found two plastic baggies containing a fine crystal substance that field tested positive for methamphetamine in a pill bottle inside [the] backpack in the back seat of the vehicle. Deputy Young also found two mirrors with white residue on them inside the backpack. Deputy Young further found a black bag under the driver's seat that contained a baggie of what he believed to be methamphetamine and Alprazolam and Oxycodone pills."

The State argues this evidence was relevant because Deputy Young found drugs "*in one of the areas* where Turbo alerted." (Emphasis added.) In short, the State asserts the fact that drugs were found inside the vehicle—which corresponded to the area outside the vehicle where Deputy Young said Turbo alerted—corroborates Deputy Young's testimony that Turbo alerted in that specific area.

Payton responds:

"[W]hen [one] reviews the proffered testimony, [it] reveals that neither finding, nor location is consistent with the locations the deputy claims the dog 'alerted' on the car. The statement in [Deputy Young's] affidavit as to the location of the purported drugs pointed

10

to by Appellant were 'inside a backpack in the back seat of the vehicle' and a 'black bag under the driver's seat.' Neither of these are locations where the deputy asserted the dog alerted, those being the passenger side and the trunk."

Generally, whether the district court erred in admitting or excluding evidence is reviewed under a multistep analysis. First, the court determines if the evidence is relevant. "Evidence is relevant when it has 'any tendency in reason to prove any material fact.' K.S.A. 60-401(b)." *State v. Bridges*, 297 Kan. 989, 995-96, 306 P.3d 244 (2013). Relevant evidence must be both probative and material. 297 Kan. at 996. Material evidence is that which has a legitimate and effective bearing on the decision of the case and is in dispute. *State v. Preston*, 294 Kan. 27, 32, 272 P.3d 1275 (2012). Probative evidence is that which furnishes, establishes, or contributes toward proof. 294 Kan. at 32. Finally, an appellate court exercises de novo review of a challenge to the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence. *State v. Bowen*, 299 Kan. 339, 349, 323 P.3d 853 (2014).

We are persuaded that Payton has the better argument given the unique facts of this case. Obviously, "we do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Harris*, 568 U.S. at 249. In that context, the district court's ruling sustaining Payton's objection to the prosecutor's question was not error. On the other hand, the State predicates the relevance and materiality of this evidence in a different context. According to the State, the proof of whether Turbo alerted may be inferred from the fact that he exhibited certain behaviors outside the vehicle in specific areas where drugs were later discovered inside the vehicle. In this way, the specific location of drugs inside the vehicle may corroborate that the drug dog's behavior was, in fact, an alert at that location outside of the vehicle.

We question the State's factual basis for this evidentiary theory in this case. Here, a search of the vehicle revealed drugs underneath the driver's side front seat and inside a

backpack found on the backseat of the vehicle. Although the State may argue that Turbo alerted to the backpack while directly outside the passenger side rear area of the vehicle, the dog also alerted to the trunk of the vehicle where no drugs were found. Moreover, Turbo did not alert to the black bag under the driver's seat which contained drugs.

In short, the facts of this case do not prove any correlation between verifying a drug dog's alert at a particular location outside the vehicle by proof that drugs were found in that specific area inside the vehicle. Assuming such a correlation could be proven, there is no such evidence in this case to establish that correlation. Accordingly, we find the district court did not err in sustaining Payton's objection to the prosecutor's question.

Affirmed.